UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SADIRA D., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | CASE NO. C22-5773-BAT <br><br> **ORDER REVERSING AND REMANDING FOR FURTHER ADMINSTRATIVE PROCEEDINGS** |

Plaintiff seeks review of the denial of her application for Supplemental Security Income Benefits. She contends the ALJ erred by (1) improperly rejecting plaintiff's symptom testimony; and (2) misevaluating the medical evidence. Dkt. 1. The Court finds that the ALJ harmfully erred by accepting Dr. Jason Lin, M.D.'s opinion that plaintiff should avoid migraine triggers without fully accounting for those limitations in the residual functional capacity ("RFC") assessment, the hypothetical posed to the vocational expert ("VE"), and the step five analysis. The Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g) so that the ALJ may either provide reasons for omitting the migraine triggers of "loud noise, bright lights and extreme heat," Tr. 1037, or revise the RFC assessment, solicit VE testimony with respect to a hypothetical that includes these additional restrictions, and reevaluate step five.

ORDER REVERSING AND REMANDING FOR FURTHER
ADMINSTRATIVE PROCEEDINGS - 1

**BACKGROUND**

Plaintiff is currently twenty-five years old, completed four or more years of college,[1] and has no past relevant work. Tr. 178, 197–98. In December 2019, she applied for benefits, alleging disability as of January 1, 2019. Tr. 178. In August 2021, the ALJ conducted a telephonic hearing and, in October 2021, issued a decision. Tr. 16–29, 35–40. The ALJ determined that plaintiff has the severe impairments of asthma, major depressive disorder ("MDD"), bipolar disorder, anxiety, postural orthostatic tachycardia syndrome ("POTS"), and migraines. Tr. 18–19. The ALJ determined that plaintiff has the RFC to perform light work with additional physical and mental limitations, including that she can never work at unprotected heights, never moving mechanical parts, and never operating a motor vehicle; she can work in humidity and wetness frequently, in dust, odors, fumes, and pulmonary irritants occasionally, and in extreme cold frequently; she can perform simple, routine tasks, can interact with supervisors frequently, can interact with coworkers frequently, and can interact with the public occasionally with superficial contact. Tr. 21–28. At step five of the sequential evaluation, the ALJ took VE testimony and determined that plaintiff has the RFC to perform a number of occupations classified as light and sedentary that exist in significant numbers in the national economy: small products assembler, office helper, marker, document preparer, final assembler, and stone setter. Tr. 28–29. The ALJ therefore found plaintiff to be not disabled. Tr. 29. As the Appeals Council denied plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. Tr. 1.

---

[1] There is a discrepancy in the record about the amount of education plaintiff has received. In her February 2020 disability report, plaintiff specified having completed four or more years of college by September 23, 2018. Tr. 198. But in her July 2020 report to a consulting psychologist, plaintiff reported having attended only "some college." Tr. 612.

ORDER REVERSING AND REMANDING FOR FURTHER
ADMINSTRATIVE PROCEEDINGS - 2

**DISCUSSION**

The Court will reverse the ALJ's decision only if it was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1502(a). The ALJ's decision may not be reversed on account of an error that is harmless. *Id.* at 1111. Where the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's interpretation. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Although plaintiff contends that the ALJ erred by misevaluating plaintiff's symptom testimony and the medical evidence, she demonstrates harmful error only as it relates to the ALJ's decision to accept Dr. Lin's limitations regarding the avoidance of migraine triggers without fully accounting for those limitations in the RFC assessment, the hypothetical posed to the VE, and the step five analysis.

**1. Acceptance of Dr. Lin's Opinion on Migraine Triggers**

Plaintiff asserts that the ALJ harmfully erred by failing to account fully for Dr. Lin's opined limitations on migraine triggers in the RFC assessment even while accepting those limitations as persuasive. The Commissioner concedes error but argues that it was harmless. The Court finds that the conceded error cannot be rendered harmless by *post hoc* justifications that would make superfluous both the RFC assessment and the VE testimony.

At step five of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). "The ALJ may meet [t]his burden at step five by asking a VE a hypothetical question based on medical assumptions supported by substantial evidence in the record and reflecting all of the claimant's limitations,

both physical and mental, supported by the record." *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012). "If a vocational expert's hypothetical does not reflect all the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir.1993) (internal quotation marks omitted).

In response to the ALJ's medical interrogatory, Dr. Lin opined that for patients with migraine headaches, "ideally, [it] would be reasonable to avoid strong odors, loud noise, bright lights and extreme heat to avoid triggering migraine headaches." Tr. 1037. The ALJ concluded that Dr. Lin's opinion was persuasive in terms of migraines and incorporated limits on odors into the RFC. Tr. 21, 27. The ALJ did not, however, explain why the RFC assessment omitted the other three out of four migraine triggers: limits on loud noise, bright lights, and extreme heat. Tr. 21. As a consequence, the ALJ posed an incomplete hypothetical to the VE that rendered the VE's testimony of no evidentiary value in supporting the ALJ's step five conclusion that plaintiff could perform jobs existing in significant numbers in the national economy. Tr. 28–29, 50–51. Plaintiff has demonstrated harmful error because the ALJ may not base a step five evaluation on VE testimony that holds no evidentiary value.

The Commissioner argues that the omission of the migraine trigger limitations from the RFC, the VE hypothetical, and the step five evaluation is harmless because only one of the occupations listed (small products assembler) would be impacted by limitations on loud noise, bright lights, and extreme heat. Dkt. 13, at 13–16. That is, the Commissioner argues that the *Revised Dictionary of Occupational Titles* suggests that the other occupations set forth by the VE—office helper, marker, document preparer, final assembler, and stone setter—would not be impacted by the additional, environmental limitations. Dkt. 13, at 14–15. Such an interpretation

of "harmless error" is unpersuasive. First, it ignores the Commissioner's burden of persuasion at step five and misstates plaintiff's burden on appeal to demonstrate harmless error. At step five, the Commissioner has the burden of showing that plaintiff can perform jobs that exist in significant numbers in the national economy and cannot satisfy that burden by relying on VE testimony of no evidentiary value. *See also Tackett v. Apfel*, 180 F.3d 1094, 1104 (9th Cir. 1999) (holding that when a claimant's ability to perform a particular level of work is impeded by additional limitations, VE testimony is required and it is reversible error not to hear VE testimony). Moreover, plaintiff demonstrates harmful error by showing that the VE's testimony was based on an incomplete hypothetical that here would rule out one, if not more, of the occupations set forth by the VE, and that the VE did not testify regarding the acknowledged limitations. Second, the Commissioner's interpretation of harmless error would render the RFC assessment and the VE testimony superfluous by permitting a reviewing court to augment an evidentiary record left open, incomplete, or unaddressed. That kind of *post hoc* rationalization is prohibited. *See, e.g.*, *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225–26 (9th Cir. 2009) (court reviews ALJ's decision "based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking").

       The Court finds that the ALJ harmfully erred by failing either to include environmental limitations on loud noise, bright lights, and extreme heat from the RFC assessment, hypothetical posed to the VE, and the step five evaluation, or to indicate why those limitations were rejected.

ORDER REVERSING AND REMANDING FOR FURTHER
ADMINSTRATIVE PROCEEDINGS - 5

### 2. Plaintiff's Discounted Symptom Testimony

In evaluating a claimant's testimony, the ALJ may use "ordinary techniques of credibility evaluation,"[2] such as inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct, whether the claimant takes medication or undergoes other treatment for the symptoms, and whether the claimant engages in daily activities inconsistent with the alleged symptoms. *See Molina*, 674 F.3d at 1112; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007). The ALJ discounted plaintiff's assertions of disabling physical and mental impairments as not entirely consistent with (1) the medical record; (2) plaintiff's treatment history; and (3) plaintiff's daily activities. Tr. 22–26. These reasons are sufficiently specific, clear, and convincing with respect to the assessed RFC of light, simple, and routine work with environmental restrictions and limited interaction with others and, in the alternative, with respect to sedentary, simple, and routine work with the additional environmental and social limitations. *See Molina*, 674 F.3d at 1122.

### a. Medical Record

The ALJ first discounted plaintiff's testimony by referring to medical evidence that might suggest the severity of her physical and mental impairments were overstated. Tr. 22–25. That a claimant's testimony is not fully corroborated by the objective medical findings, in and of itself, is not a clear and convincing reason for rejecting it. *See Smolen*, 80 F.3d at 1285. "At the same

---

[2] Social Security Ruling ("SSR") 16-3p, eliminates previously applicable SSR references to "credibility," and clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *See* SSR 16-3p, *available at* 2016 WL 1119029, at *1–*2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).

The ALJ acknowledged that a pulmonary function test showed a severe obstruction and that plaintiff had complaints about shortness of breath aggravated by cold air, but noted that physical examination reports also documented generally normal respiratory observations, including unlabored respiratory effort and normal lung sounds. *See* Tr. 22 (citing Tr. 527, 530, 689, 693); Tr. 23 (citing Tr. 468, 693, 869, 903–04, 911, 921). The ALJ noted that despite plaintiff's reports of ongoing headaches and migraines, the record generally documented that plaintiff was not in acute distress, with normal neurological exams and attention. Tr. 24 (citing Tr. 354–55, 370–71, 385–86, 399–400, 414–15, 468, 941–42, 957–58). The ALJ acknowledged both that plaintiff reported that her migraines were well-controlled with low-dose propranolol and magnesium suspension and had three migraines between November 2020 and March 2021, as well as that plaintiff reported increasing migraines in April 2021. Tr. 24 (citing 877, 879, 930). The ALJ noted that despite plaintiff's reports that the severe impairment of POTS might be causing her to experience lightheadedness, daily vertigo, and syncope, physical examination reports were generally normal, including normal coordination, normal balance testing (i.e., absent Romberg's sign), no weakness or strength abnormalities, and a normal gait. Tr. 24 (citing Tr. 355, 371, 386, 400, 415, 457, 468, 942, 958). The ALJ acknowledged plaintiff's allegations of difficulty with memory, concentrating, completing tasks, communicating with new people or in new environments, and dealing with stress. Tr. 22 (citing Tr. 213). Nevertheless, the ALJ noted that while plaintiff showed varied mood and affect, plaintiff's objective findings were

otherwise generally normal and thus the objective medical evidence did not suggest the presence of more limitations than those set forth in the RFC. Tr. 25 (citing Tr. 730, 732, 734, 738–824).

Although plaintiff contends that the ALJ should have interpreted the medical record in a light more favorable to her, she cannot demonstrate that the ALJ's choice to discount her symptom testimony failed to be supported by substantial evidence or was the result of legal error. The ALJ referred to specific, clear and convincing evidence in the medical record that could reasonably be construed to demonstrate less severe impairments than those alleged by plaintiff when read in the context of plaintiff's treatment history and daily activities.

### b.  Treatment History

The ALJ next assessed plaintiff's testimony about the severity of her physical and mental impairments based on her treatment and its effectiveness. *See* 20 C.F.R. § 416.929(c)(3)(iv), (v); *see also Lingenfelter*, 504 F.3d at 1040.

With respect to physical limitations, the ALJ acknowledged that plaintiff reported worse asthma symptoms in January 2021. Tr. 23. Nevertheless, the ALJ also noted that in March 2020, plaintiff's asthma was controlled and stable, and that physical examination reports during the relevant time period generally documented normal respiratory observations, including during the January 2021 examination and a May 2021 physical examination. Tr. 23 (citing Tr. 468, 488, 693, 869, 903–04, 911, 921). Thus, the ALJ noted that the treatment record showed both a period in which migraines were increasing in 2021, and a period in which migraines were well-controlled with low-dose medication in 2020. Tr. 24.

With respect to mental impairments, the ALJ characterized plaintiff's treatment as "routine and conservative in nature with medication and limited therapy." Tr. 25. For example, in June 2020, plaintiff reported that with her new medication, she felt "a huge weight lifted . . .

feeling more in control." Tr. 25 (citing Tr. 824). Also in June 2020, plaintiff signed up for online school again, Tr. 815. In August 2020, plaintiff was discharged from treatment because she had no longer been making appointments. Tr. 825. Nonetheless, medical records indicated that treatment continued with prescribed medication. Tr. 25 (citing Tr. 930–31, 939). Thus, the ALJ concluded that in light of normal physical and mental examination reports throughout the record (apart from varied mood and affect), such a treatment history did not suggest the presence of impairments that exceeded the assessed RFC. Tr. 25.

Although plaintiff avers that her treatment history established more severe physical and mental impairments than those assessed, the ALJ reasonably cited plaintiff's treatment history as a specific, clear, and convincing reason to discount plaintiff's symptom testimony.

### c. Daily Activities

The ALJ discounted plaintiff's symptom testimony as not entirely consistent with her daily activities. While a claimant need not "vegetate in a dark room" in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. *Molina*, 674 F.3d at 1112–13 (internal marks and citations omitted). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Id.* at 1113.

The ALJ concluded that a number of plaintiff's daily activities suggested that her physical and mental impairments were not entirely debilitating: being able to read books; watch movies; work with her hands; go for walks; going to the grocery store; in March 2020 traveling to Florida to visit her significant other; and in June 2020 planning another trip to Florida. Tr. 25–26 (citing Tr. 790, 805, 821). Although plaintiff challenges the transferability of such daily

activities to the workplace, it was not unreasonable for the ALJ to conclude that this "generally normal day-to-day existence" suggested that plaintiff's impairments were not as severe as alleged.

Although plaintiff presents a competing interpretation of the evidence, the ALJ citation to inconsistent daily activities constituted a specific, clear, and convincing reason for determining that plaintiff's physical and mental impairments were not totally debilitating.

### 3. Evaluation of the Medical Evidence

When considering medical opinions, the ALJ considers the persuasiveness of the medical opinion using five factors (supportability, consistency, relationship with claimant, specialization, and other), but supportability and consistency are the two most important factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2), (c) (2017). The ALJ must explain in the decision how the factors of supportability and consistency were considered. 20 C.F.R. §§ 404.1520c(b), 416.920c(b) (2017). The ALJ is not required to explain how the other factors were considered, unless the ALJ finds that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported and consistent with the record, but not identical. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3) (2017). The new regulations supplant the hierarchy governing the weight an ALJ must give medical opinions and the requirement the ALJ provide specific and legitimate reasons to reject a treating doctor's opinion. *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). An ALJ cannot reject a doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. *Id.*

The Court earlier discussed the ALJ's harmful omission of Dr. Lin's recommended environmental limitations based on plaintiff's migraines. Plaintiff also challenges the ALJ's

determinations to find unpersuasive (1) the physical assessments made by state agency medical consultants Dr. Desmond Tuason, M.D., and Dr. Norman Staley, M.D.; and (2) the psychological assessments made by state agency consultants Dr. Dan Donahue, Ph.D., and Dr. Patricia Kraft, Ph.D., and consultative examiner Dr. Justin Stramschror, M.D., relating to plaintiff's ability to maintain attendance at work. Dkt. 10, at 12–17; *see* Tr. 26–27. Aside from the handling of Dr. Lin's opinion, the Court finds that plaintiff has not demonstrated that the ALJ failed to support his evaluation of the medical evidence with substantial evidence or based his decision on an incorrect legal standard.

### a. Physical Assessments by Drs. Tuason and Staley

Dr. Tuason opined that plaintiff was capable of performing work at the medium exertional level with some environmental limitations. Tr. 63. The ALJ found Dr. Tuason's opinion to be unpersuasive and found plaintiff to be more limited. Tr. 26. Any error committed by the ALJ by finding plaintiff to be more limited than did Dr. Tuason was harmless. *See Johnson v. Shalala*, 60 F.3d 1428, 1436 n.9 (9th Cir. 1995).

Dr. Staley opined that plaintiff was limited to sedentary work with some environmental restrictions. Tr. 82–84. The ALJ found Dr. Staley's opinion to be unpersuasive and determined that plaintiff could perform light work with additional restrictions. Tr. 26. The ALJ found that plaintiff's ability exceeded sedentary because despite her physical complaints regarding migraines, asthma, and POTS, the record demonstrated generally normal observations, including normal respiratory exams, no coordination abnormalities, absent Romberg's sign, no weakness/strength abnormalities, and a normal gait; progress notes regarding medication and lifestyle changes improved her migraines and POTS symptoms; and plaintiff utilized a small trampoline to improve her balance, energy, focus, and lungs. Tr. 26 (citing, e.g., Tr. 355, 371,

386, 400, 415, 457, 468, 869). Elsewhere in the decision, the ALJ cited the medical record, plaintiff's treatment history, and plaintiff's daily activities as reasons for discounting a determination of sedentary work based on physical impairments. Tr. 22–26.

The Court finds that the ALJ reasonably concluded that the opinions of Drs. Tuason and Staley were unpersuasive based on supportability and consistency. Moreover, any error with respect to discounting Dr. Tuason's opinion was rendered harmless by having considered plaintiff to be more impaired than Dr. Tuason's opinion; and any error with respect to rejecting Dr. Staley's limitation of plaintiff to sedentary work was rendered harmless at step five by the ALJ setting forth sedentary occupations that plaintiff could perform.[3] Plaintiff has not demonstrated that the ALJ's handling of the opinions by Drs. Tuason and Staley were not supported by substantial evidence or based on an improper legal standard.

### b.  Psychological Assessments by Drs. Donahue, Kraft, and Stramschror

Plaintiff challenges the ALJ's decision to discount the psychological assessments of state agency consultants Drs. Donahue and Kraft and of consultative examiner Dr. Stramschror regarding plaintiff's ability to maintain attendance at work.[4] Dkt. 10, at 16–17. The Court finds that the ALJ reasonably concluded that their assessments were not persuasive based on their supportability and consistency. Tr. 26–27.

Drs. Donahue and Kraft opined that plaintiff would occasionally have, on an occasional basis, "higher absenteeism th[a]n avg employee." Tr. 65, 86. In explaining why the absenteeism would occur only on an occasional basis, Drs. Donahue and Kraft noted that "evidence does not

---

[3] As discussed earlier, the ALJ's step five determination was flawed based on other reasons that will be revisited upon remand.

[4] Plaintiff does not challenge the ALJ's handling of the psychological assessments based on any factor other than plaintiff's ability to maintain attendance at work. *See* Dkt. 10, at 16–17.

1  show any acute/severe MH decompensation over the past year." Tr. 65, 86. The ALJ concluded
2  that this explanation did not support assessments that plaintiff would occasionally have a higher
3  absenteeism rate than the average employee. Tr. 26. The ALJ also noted that the assessments
4  were not consistent with plaintiff's conservative mental health treatment with medication and
5  limited therapy. Tr. 26 (citing Tr. 304, 322, 824, 930–31, 939). The ALJ found the opined
6  additional absences inconsistent with the longitudinal record indicating that plaintiff lived a
7  generally normal day-to-day existence. Tr. 26. The ALJ observed that the higher than average
8  absences were inconsistent with mental status examinations that showed variable mood and
9  affect but a consistently normal appearance, attitude, thought process, memory, judgment, and
10 insight. Tr. 27 (citing Tr. 730, 732, 734, 738–39). The ALJ also noted that to the extent the
11 opinions of Drs. Donahue and Kraft suggested a need for additional absences, they had failed
12 indicate the number of absences. Contrary to plaintiff's assertion, the ALJ's conclusion that the
13 opinions lacked specificity regarding such a vital limitation was a reasonable ground for
14 discounting them, particularly in light of the other reasons for discounting the opinions.

15       Dr. Stramschror opined that plaintiffs ability to maintain regular attendance in the
16 workplace was "quite poor based on [her] agoraphobia." Tr. 614. The ALJ found Dr.
17 Stramschror's citation to agoraphobia to be unpersuasive and unsupported given plaintiff's
18 nightly walks, ability to travel to Florida by herself to visit people, and going to the grocery
19 store, as well as given evidence of her generally stable functioning and mental status
20 examinations despite varied mood and affect. Tr. 26 (citing Tr. 41–42, 790, 806, 811, 730, 732,
21 734, 738–39).

22       The Court finds that the ALJ reasonably concluded that the opinions of Drs. Donahue,
23 Kraft, and Stramschror were unpersuasive based on supportability and consistency. Plaintiff has

ORDER REVERSING AND REMANDING FOR FURTHER
ADMINSTRATIVE PROCEEDINGS - 13

not demonstrated that the ALJ's handling of the opinions by Drs. Donahue, Kraft, and Stramschror were not supported by substantial evidence or based on an improper legal standard.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). On remand, the ALJ should either provide reasons for omitting the migraine triggers of "loud noise, bright lights and extreme heat," Tr. 1037, or revise the RFC assessment, solicit VE testimony with respect to a hypothetical that includes these additional restrictions, and reevaluate step five. Plaintiff is invited to move under the Equal Access to Justice Act ("EAJA"), 20 U.S.C. § 2412, for an award of attorney's fees and costs.

DATED this 1st day of May, 2023.

BRIAN A. TSUCHIDA
United States Magistrate Judge